IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

REBECCA A. MARSH,

                Plaintiff,

                                                  Case No. 6:15-cv-0332-TC

v.

                                                  FINDINGS AND RECOMMENDATION

CAROLYN W. COLVIN,
Commissioner of Social Security,

                Defendant.

COFFIN, Magistrate Judge:

      Rebecca Marsh ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB") under the Act. For the reasons set forth below, the Commissioner's decision should be reversed and this case should be remanded for further proceedings.

Page 1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born on August 29, 1957, plaintiff attended school until the tenth grade and apparently never received a GED. Tr. 488. She has past relevant work experience as a certified nurse's assistant ("CNA"), night watchman, camp host, in-home care provider, and flagger. Tr. 305. Plaintiff alleges disability beginning January 1, 2011 due to neuropathy, ringing in the ears, retinopathy, incontinence, back injury, arthritis, depression, diabetes, posttraumatic stress disorder ("PTSD"), and tremors. Tr. 111, 127. Plaintiff was 53 years old on the alleged onset date of disability, so was closely approaching advanced age at that time; as of December 31, 2015, she is considered of advanced age under the Act. Id.

On March 7, 2012, plaintiff filed applications for DIB and supplemental security income ("SSI"). Id. After the application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ") to dispute only the DIB decision. Tr. 184-85. On October 8, 2013, an ALJ hearing was held before the Honorable Janice E. Shave, at which plaintiff attended remotely via video. Tr. 30-89. She was represented by counsel and testified; a vocational expert ("VE") also testified. Id. On November 1, 2013, ALJ Shave issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 21. On December 23, 2014, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Subsequently, plaintiff filed a complaint in this Court.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); see also Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) (the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. Yuckert, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that [the Commissioner] acknowledges are so severe as to

Page 3 - FINDINGS AND RECOMMENDATION

preclude substantial gainful activity." Id.; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform his past relevant work, the burden shifts to the Commissioner. Yuckert, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. Id. at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. At step two, the ALJ determined that plaintiff had the following severe impairments: "major depressive disorder (without psychotic features); dependent personality disorder; PTSD; anxiety disorder; and status post lumbar laminectomy/chronic low back pain." Id. At step three, the ALJ found that plaintiff's impairment did not meet or equal the requirements of a listed impairment. Tr. 14.

Because plaintiff did not establish disability at step three, the ALJ continued to evaluate how plaintiff's medical impairments affected his ability to work. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform medium work with the following caveats:

> The claimant is able to lift up to 50 pounds occasionally and lift/carry up to 25 pounds frequently. She is able to stand and/or walk a maximum of four hours and sit up to four hours each out of an eight-

> hour workday. The claimant is able to perform work that does not require more than occasional climbing of ladders, ropes, and scaffolds above a three-step stepstool. The claimant is able to perform work that does not require concentrated exposure to excessive noise. She is able to perform work involving speaking at conversational levels or with telephone use, but is limited to jobs never requiring fine hearing capability, defined as being capable of listening to work instructions at a whisper. The claimant is able to understand, remember, and carry out detailed, but not complex, instructions, meaning jobs up to SVP 4 levels.

Tr. 16. At step four, the ALJ concluded that plaintiff was able to perform some past relevant work. Tr. 19. Despite the ALJ's step four finding, she continued the evaluation process. At step five, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform. Tr. 20. Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of the Act. Tr. 21.

## DISCUSSION

Plaintiff asserts that the ALJ erred by (1) improperly assessing her credibility; (2) failing to adequately assess the medical opinions of treating physician Thea Peterson, M.D. and examining psychiatrist Jennifer Metheney, Ph.D.; and, consequently, (3) providing erroneous findings at steps four and five.

I. Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide a clear and convincing reason to reject his subjective symptom testimony regarding the extent of his impairment. Pl.'s Br. 13-14. When a claimant has a medically documented impairment that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only

by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).

A general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Here, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible concerning their intensity, persistence, and limiting effects. Tr. 19. For instance, the ALJ found the objective evidence demonstrated plaintiff's ability to perform work-related activities after her alleged onset date. Tr. 17. In evaluating a claimant's credibility, an ALJ may consider their daily activities and work record, as well as other "ordinary techniques," such as inconsistent statements.. Smolen, 80 F.3d at 1284. The ALJ found that plaintiff worked part-time as an in-home caregiver from her alleged onset date until November 2012, citing her earning records and testimony. Tr. 17. The ALJ also found plaintiff worked in part-time elsewhere in 2011. Id.

Plaintiff argues she did not "hold herself out" as being ready and able to work, and although she was employed as a caregiver, had problems keeping her temper in check. Pl.'s Br. 15. Plaintiff's first argument is not supported by the record, however, as plaintiff testified she remains on the

Page 6 - FINDINGS AND RECOMMENDATION

Oregon State caregiver registry. Tr. 17, 43. Further, in applying for unemployment benefits, she specifically certified that she was ready, willing and able to work. Tr. 17, 44-45. Accordingly, the ALJ's rationale is valid. While plaintiff cites "PTSD, back pain, incontinence, feet pain, and anger outbursts" as the reason she quit her caregiver position, she testified at hearing that she left because her client's family was disparaging her. Pl.'s Br. 15; Tr. 51. Plaintiff also argues her "part time work activities were as opposed to homelessness." Pl.'s Br. 15. However, the argument is inapposite – the question before the ALJ was not plaintiff's incentive for pursuing work, but rather her functional ability to perform work.

In addition, the ALJ found plaintiff's earnings in 2011 and 2012 – within the adjudicatory period – were higher than in years past. Tr. 17. The ALJ also provided a detailed explanation of her assessment of plaintiff's unemployment benefits, noting that while such benefits do not necessarily preclude disability under the Act, but nonetheless may be considered a factor in assessing a claimant's testimony. Id. As such, the ALJ provided specific, clear and convincing reasons to support her finding regarding plaintiff's concurrent part-time employment. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding credibility finding based in part on the plaintiff's work as a part-time care-giver and seeking out other employment).

The ALJ also found that plaintiff's symptom allegations were inconsistent with the objective medical evidence of record. Tr. 18. Testimony inconsistent with the objective medical evidence is a valid reason for an ALJ to impugn a claimant's credibility; however, it cannot be the sole reason. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1163 (9th Cir. 2008). The ALJ provided a summary of plaintiff's treatment for hearing loss and tinnitus, which was found not to be a severe impairment, consistent with the opinion of a treating provider that her hearing loss and tinnitus were

Page 7 - FINDINGS AND RECOMMENDATION

"annoying . . . but certainly not disabling." Tr. 438. Plaintiff does not assign error to the ALJ's finding nor identify any functional limitations arising from any hearing and/or tinnitus condition. See Pl.'s Br. 15-16. Accordingly, the finding should be upheld.

Regarding plaintiff's neuropathy allegations, the ALJ found the medication Gabapentin was generally effective, and was "adjusted from time to time to accommodate changes in her symptoms." Tr. 18. Plaintiff contends the ALJ erred, arguing, "she reported the Gabapentin was not working well in 2012." Pl.'s Br. 16. Indeed, on one occasion in June 2012, plaintiff reported increased foot pain due to neuropathy, and Dr. Peterson advised plaintiff to increase her dosage. Tr. 462-63. The record also reflects, however, that plaintiff reported her Gabapentin was effective in December, 2010 (tr. 474); February, 2011 (tr. 472); and June, 2011 (tr. 469). Dr. James Harrison noted no neuropathy-related pain on Plaintiff's September 20, 2011 visit, (tr. 466-67), and Dr. Peterson noted no neuropathy-related pain on September 28, 2011 (tr. 464-65). Tr. 462-63. Moreover, during the administrative hearing, plaintiff indicated she eventually returned to her original dosage of Gabapentin, stating, "it does help a lot." Tr. 58. As such, the ALJ's interpretation of the evidence was based on substantial evidence and should be upheld.

The ALJ found plaintiff's allegations of severe anger problems were not substantiated by the medical record. Tr. 18. Plaintiff alleges her anger problems prevented her from working, and caused her to lose her job as an in-home care provider. Pl.'s Br. 15. Elsewhere in the record, Plaintiff provided written testimony that she quit her job due to PTSD, a "back issue," bladder incontinence, ringing in the head, and anger outbursts. Tr. 369. However, at the hearing, plaintiff testified she quit her job as a caregiver because she was ridiculed by her client's family members. Tr. 51. Moreover, as the ALJ noted, plaintiff reported to Dr. Metheny that she got along "great" with coworkers and

Page 8 - FINDINGS AND RECOMMENDATION

supervisors and the general public. Tr. 18, 488. The ALJ further noted plaintiff was generally pleasant and cooperative with treating and examining physicians, which the record bears out. Tr. 18. Accordingly, given plaintiff's inconsistent testimony, the ALJ did not err in finding her credibility was diminished. Id.

Plaintiff also argues the ALJ erroneously ignored "a clinically significant impairment in social functioning" reported by Dr. Metheny. Pl.'s Br. 16; tr. 491. However, Dr. Metheny noted the impairment in social functioning in the context of establishing whether Plaintiff met the criteria for PTSD. Tr. 491. The ALJ found Plaintiff has PTSD at step two of the sequential process, so it is unclear how Dr. Metheny's note furthers plaintiff's argument. Additionally, plaintiff fails to articulate why a "clinically significant" finding necessarily establishes any specific functional limitation, let alone disability. A claimant may have any number of clinically significant findings evincing an impairment or condition; however, the mere presence of a severe impairment is not determinative of disability. If that were the case, the sequential evaluation process in the instant case would have ended at step two. Moreover, the ALJ is not required to discuss every particular finding in rendering a decision.

Similarly, plaintiff argues the ALJ erred because her PTSD is not "situational," but, presumably, family-related, severe and "clinically significant." Pl.'s Br. 16. However, as discussed above, the ALJ found plaintiff has the severe impairment of PTSD. Tr. 13. The ALJ explained plaintiff "has been living in difficult circumstances for years; the record reflects much of [plaintiff's] stress and anxiety is situational and family-related." Tr. 18. Plaintiff fails to provide a cogent reason why the ALJ's interpretation of the evidence is erroneous, what functional limitations the ALJ failed to include in the RFC formulation, or why any alleged errors are harmful. See Pl.'s Br. 16-17.

Page 9 - FINDINGS AND RECOMMENDATION

Moreover, independent review of the record confirms that ALJ's findings are supported by substantial evidence. Tr. 491, 517; Molina v. Astrue, 674 F.3d 1104, 1115-16 (9th Cir. 2012) (harmless error rule applies when the ALJ's decision is supported by substantial evidence notwithstanding legal error where it is inconsequential to the ultimate disability determination) (citations omitted). Thus, to the extent plaintiff argues the ALJ merely cherry-picked information described above, the argument lacks merit.

Plaintiff also contends the ALJ failed to appropriately consider how plaintiff's reported activities of daily living ["ADLs"] undermined her credibility. Pl.'s Br. 17. Reported ADLs may adversely effect a claimant's credibility determination when the activities meet a threshold for transferable work skills, or if the reported ADLs conflict with claimant's own testimony. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (citations omitted). However, a claimant need not be utterly incapacitated to be eligible for disability benefits. Fair, 885 F.2d at 603. Here, the ALJ found plaintiff's ADLs demonstrated she was is able to function at a level greater than alleged. Tr. 18.

In support, the ALJ noted Plaintiff "does all the shopping and food preparation for [her] family . . . and enjoyed working in her garden and going out rock hunting." Tr. 18. The ALJ also noted Plaintiff reported "mak[ing] a point of getting out and going for walks, and was able to read her Bible when she was unable to attend church." Id. The ALJ cited Exs. 19F/6 (tr. 510) and 19F/13 (tr. 517) in support of her finding; Ex. 19F/6 does not, however, contain any relevant evidence. Tr. 510. The second citation contains the following passage: "she does enjoy getting out in her garden and goes . . . rock hunting . . . she spoke of these activities with enthusiasm. She indicated that she is of the Catholic faith and when she is not able to get to church, does read the Bible . . . she does make a point of getting out and going for walks currently." Tr. 517.

Page 10 - FINDINGS AND RECOMMENDATION

Plaintiff argues her ADLs does not meet a threshold for work activities, and that she indicated she did not prepare meals for her family. Pl.'s By. 17-18. In support, plaintiff references her own functional report, in which she responded, "I starve," to the types of food she is able to prepare, that she never prepares food, and "quit" cooking. Tr. 339. Further, in response to a question asking why she cannot or does not prepare meals, she answered, "Dont [sic] Care to!!". In contrast, plaintiff reported she did "all the shopping and food preparation" to Dr. Steven Rolnick. Tr. 512. This is an overt contradiction.

The ALJ did not, however, explain why plaintiff's ability to work in her garden or hunt for rocks belies other testimony, or meets a threshold for transferable work skills. As such, the rationale does not meet the clear-and-convincing legal standard. Nevertheless, because the ALJ provided other valid reasons based upon substantial evidence for impugning plaintiff's credibility, the error is harmless. Molina, 674 F.3d at 1115.

The ALJ also found plaintiff's credibility was diminished by her "unsophisticated, flamboyant responses" to her functional report, which, indeed, have the words "crazy" and "none" scrawled across several of the pages. Tr. 18; 338-50. The ALJ noted that the state agency psychological consultants felt the responses undermined plaintiff's credibility, and that the responses were inconsistent with plaintiff's presentation at hearing and to her treating and examining physicians. Tr. 18. Plaintiff counters that the responses are illustrative of her impulsiveness and inappropriate behavior arising from her mental impairments. Pl.'s Br. 18. However, even if plaintiff's responses suggest a level of mental impairment, her failure or inability to provide accurate and/or forthright responses in her disability application is a valid reason to accord those responses diminished weight. See Thomas, 278 F.3d at 958-59 (ALJ may employ ordinary techniques of

Page 11 - FINDINGS AND RECOMMENDATION

credibility evaluation) (citations omitted). Further, because the ALJ's interpretation of the record was reasonable and based upon substantial evidence, it should be upheld.

Thus, for all the foregoing reasons, the ALJ's credibility assessment should be sustained.

II. Medical Opinion Evidence

Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence of treating physician Dr. Peterson and examining psychologist Dr. Metheny. In Social Security jurisprudence, there are three types of medical opinions: those of treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing Lester, 81 F.3d at 830-31). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Id. When evaluating conflicting opinions, however, the ALJ is not required to accept an opinion that is unsupported by clinical findings, or is brief or conclusory. Id. (citation omitted). Similarly, an ALJ need not adopt any medical opinion to the extent it is based on a claimant's subjective symptom allegations, and the ALJ has made an adverse finding regarding the claimant's credibility. See, e.g., Bray, 554 F.3d at 1228; see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004). Because the medical opinions at issue are both contradicted by the state agency physicians of record, the applicable legal standard is specific-and-legitimate.

A. *Dr. Peterson*

The ALJ accorded "little weight" to a medical opinion and questionnaire prepared by treating physician Dr. Peterson. Tr. 19. The ALJ found the doctor's assessment was inconsistent with plaintiff's reported ADLs and lifting and carrying limitations, and also the doctor's assessment of

Page 12 - FINDINGS AND RECOMMENDATION

Plainitff's likely absenteeism. Tr. 19. The ALJ further found Dr. Peterson's opinion that plaintiff is moderately to markedly impaired by her psychological symptoms inconsistent with the record as a whole. Id.

Plaintiff first argues the ALJ did not adequately explain why plaintiff's activities of gardening, rock hunting, and lifting and carying were inconsistent with Dr. Peterson's assessment. Pl.'s Br. 8. Dr. Peterson completed two check-the-box type worksheets in May 2013. Tr. 501-504. The doctor felt plaintiff was limited to 2 hours of standing and walking per 8-hour workday; 4 hours of sitting; and able to lift and carry of 20 pounds occasionally and 10 pounds. frequently. Tr. 501. The ALJ specifically noted Plaintiff's testimony regarding hunting for rocks, gardening, and going for walks was contradicted by the limitations imposed by Dr. Peterson. Tr. 19. Indeed, Dr. Rolnick indicated he encouraged Plaintiff to continue to partake in "positive activities" she expressed taking pleasure in, including gardening and going for walks. Tr. 517, 519. While gardening and walking are activities which may not necessarily entail more than 2 hours of standing and 4 hours of sitting per day, the ALJ reasonably inferred the activities reflected a greater functional ability than that recognized by Dr. Peterson. Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (citation omitted). The Court would abuse its discretion to displace the ALJ's rational interpretation of the evidence, even if it is not the only possible interpretation. Id.

The ALJ's finding regarding Plaintiff's lifting ability is also supported by substantial evidence in the record. During the ALJ hearing, Plaintiff explained she was able to lift up to 50 pounds., but only 15 pounds frequently. Tr. 66-68. The ALJ reasonably concluded the ability to lift 50 lbs. occasionally and 15 lbs. frequently was inconsistent with Dr. Peterson's more conservative estimates. Tr. 19. Again, although Plaintiff argues for a different interpretation of the medical

Page 13 - FINDINGS AND RECOMMENDATION

evidence, the ALJ is the proper arbiter of conflicts and/or ambiguities in the medical record, and the ALJ's rational interpretation of that evidence may not be disturbed. Andrews, 53 F.3d at 1039-40. Because the ALJ's rationale is specific and supported by substantial evidence of record, it should be affirmed.

Finally, the ALJ did not adopt Dr. Peterson's opinion that Plaintiff would miss more than three days per month due to mental impairments. Tr. 19. The ALJ provided valid reasons not to adopt the doctor's assessment. Id. First, the mental functioning assessment was based largely on Plaintiff's self-reports. Tr. 19; see Bray, 554 F.3d at 1228 (citations omitted). Indeed, the doctor did not provide any objective medical evidence in support of the mental restrictions. See tr. 502-05. Second, Dr. Peterson diagnosed "headache, tinnitus, [and] peripheral neuropathy," but did not explain which, if any, of the diagnoses resulted in any functional limitation, and provided no basis for her opinion. As such, it was not unreasonable for the ALJ to infer the findings were based on plaintiff's testimony, which the ALJ properly found not fully credible. Molina, 674 F.3d at 1111-12 (an ALJ is not required to adopt conclusions set forth in check-the-box forms which are unsupported by specific reasoning or clinical findings). Here, the ALJ properly set forth her own interpretation of the evidence and articulated specific-and-legitimate reasons for rejecting Dr. Peterson's contrary, and conclusory, assessments. Tr. 18; see Reddick, 157 F.3d at 725. The ALJ's rational interpretation should be upheld.

B. *Dr. Metheny*

Plaintiff contends the ALJ failed to consider and adopt opinions set forth by examining psychologist Dr. Metheny. Pl.'s Br. 11. Specifically, Plaintiff assigns error to the ALJ's alleged failure to include social functioning limitations. Id. However, as previously explained above, Dr.

Page 14 - FINDINGS AND RECOMMENDATION

Metheny made no explicit findings regarding Plaintiff's social functioning. See tr. 489-91. While Plaintiff reiterates her argument that the doctor's "clinically significant" social functioning limitation was ignored, the ALJ was not required to adopt it. Significantly, plaintiff told Dr. Metheny she got along "great" with supervisors, coworkers, and the general public – a statement directly at odds with an allegedly extreme impairment in social functioning. Tr. 15, 488. Moreover, a "clinically significant" limitation does not describe the severity of a functional limitation, but rather merely the existence of an undefined degree of functional limitation. Supra. To the extent the ALJ found the limitation was mild, the ALJ's interpretation of the evidence is not inconsistent with that of Dr. Metheny. Tr. 15, 19. Plaintiff's assertions that Dr. Metheny "endorsed" extreme limitations in social functioning and failed to include any limitation in social functioning are, therefore, unsupported by fact or law. See Pl.'s Br. 11. The ALJ did not err.

III. RFC Formulation

Plaintiff argues that the RFC formulation was tainted by the ALJ's alleged errors in evaluating her credibility and the medical opinion evidence discussed above. However, as the Court finds the ALJ did not harmfully err in evaluating Plaintiff's credibility or the medical evidence, Plaintiff's RFC contentions are inapposite. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175-76 (9th Cir. 2008). The ALJ properly incorporated the credible testimonial and medical evidence in crafting Plaintiff's RFC.

Furthermore, the ALJ properly included the limitations set forth in the RFC in posing hypothetical employability questions to the VE. The VE responded that, considering her RFC, Plaintiff was functionally capable of performing her past relevant work, and additionally, other jobs in the national economy. Tr. 19-20, 81-82, 85, 87. Accordingly, the ALJ's decision is supported by

Page 15 - FINDINGS AND RECOMMENDATION

substantial evidence and free of harmful legal error.

## CONCLUSION

For the forgoing reasons, the Commissioner's final decision should be AFFIRMED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when they are due or filed, whichever date is earlier.

DATED this 15st day of June 2016.

                                                        THOMAS M. COFFIN
                                                        United States Magistrate Judge